UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**JEFF CARPENTER**                                              **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO. 3:20-CV-179-BJB**

**TYLER STROUGH**, *et al.*                                **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Jeff Carpenter, acting as his own lawyer, sued Philip Campbell, James Ford, Lovell
Lewis, Alan Long, Darrel Lyons, Brian Mayfield, Ben Mitchell, Tyler Strough, and Everett
Thomas, employees of the Kentucky Department of Corrections (collectively, the "KDOC
Defendants" or "Defendants").  Carpenter alleges that he was retaliated against, in violation of
his rights under the First Amendment, for asserting that he was filing a grievance and lawsuit
against the KDOC Defendants after he was allegedly mistreated.  *See* Complaint [DN 1].  The
KDOC Defendants moved to dismiss Carpenter's claim, arguing that he failed to exhaust his
administrative remedies and that the suit is barred by the doctrine of *res judicata*.  [DN 23].
Carpenter filed a cross-motion for summary judgment.  [DN 27; DN 29].

Carpenter also filed a motion for entry of default for failure to timely file an answer or
request an extension of time [DN 22], as well as a motion for appointment of counsel [DN 34].

## I.  BACKGROUND

### 1. Factual Background

Carpenter, an inmate currently housed at the Kentucky State Penitentiary ("KSP")
initiated this action on March 9, 2020.  Carpenter states that in August 2019, while he was
housed at Kentucky State Reformatory ("KSR"), he was employed as an inmate
watcher/observer in the Corrections Psychiatric Treatment Unit ("CPTU").  [DN 1 at ¶ 1].  He

explains that in August 2019, an increased number of CPTU inmates engaged in self-harm by cutting themselves with razorblades.  [*Id.* at ¶¶ 7–10].  In response to this increase, Carpenter alleges that Defendant Strough accused the inmate watchers/observers of being the source of the razorblades that the inmates were using to self-harm.  [*Id.* at ¶¶ 11–13].  More pointedly, Carpenter states that on August 11, 2019, Strough accused him of providing a razorblade to an inmate who later self-harmed.  [*Id.* at ¶¶ 16–17].  In response, Carpenter says he told Strough that "he was going to get the same thing his fellow Sgts Graham and Butler got, for trying to set [him] up in 2014, [and he] said [he] was filing a grievance and class action lawsuit against him and [everyone] involved in this scam."  [*Id.* at ¶ 17].

As a result of his confrontation with Strough, Carpenter alleges that Defendants Lyons and Mayfield packed up all of his property from his cell.  [*Id.* at ¶ 21].  During that time, Carpenter says that 42 pieces of his property were confiscated and labeled as either over the allowable allotment, not authorized, or altered by repair.  [*Id.*].  Then, on August 12, Carpenter was moved to segregation.  [*Id.* at ¶ 22].  On August 14, Carpenter says he was informed that he had been issued a disciplinary report in connection with a PlayStation found in his property.  [*Id.* at ¶ 23; DN 1-10 at 1–2].  Lyons issued the disciplinary report.  [DN 1-10 at 1].  Sergeant Zachary Terorde — the investigating officer assigned to the case — charged Carpenter with "[s]tealing or possession of stolen goods [less than] $100."  [*Id.* at 2].

On August 19, Carpenter asserts that he was informed he was issued a separate disciplinary report in connection with providing an inmate a razorblade.  [DN 1 at ¶ 26; DN 1-10 at 3–5].  Strough issued the disciplinary report.  [DN 1-10 at 3].  After investigating, Terorde charged Carpenter with "[s]muggling of contraband items into/out of/within institution."  [*Id.* at 4].  Ultimately both disciplinary reports were dismissed.  [DN 1 at ¶ 30].

About a month later, on September 11, Carpenter was transferred from KSR to KSP.  [*Id.* at ¶¶ 31–32].  Carpenter alleges that he filed a grievance on September 16, alleging the KDOC Defendants retaliated against him.  [*Id.* at ¶ 33; DN 1-13 at 1–3].  This grievance was rejected because the issue was "non-grievable" (which means any challenge had to follow a separate appeal process).  [DN 1-13 at 4].  Carpenter claims that he was informed there was no further appeal because the grievance was rejected at all levels.  [DN 1 at ¶ 38].  Following the rejection, Carpenter states that he "sent a copy to the commissioner, but never received a response."  [*Id.*].

### 2. State Court Litigation

Carpenter's complaint acknowledges that on November 1, 2019, he filed suit in Franklin Circuit Court, No. 19-CI-01188, against Strough, Mitchell, Ford, Lewis, Campbell, Long, former KDOC Commissioner Kathleen Kenney, and KSR Warden Anna Valentine for "state law violations and retaliation, false charges, [c]onspiracy."  [*Id.* at ¶ 39].  In his state-court action, Carpenter set forth the same factual narrative he relies on in this case and set out five state causes of action and a claim of retaliation for exercising his First Amendment rights.  [DN 23-5 at ¶¶ 28–38].  Regarding his retaliation claim, Carpenter argued that he was transferred from KSR to KSP because of the defendants' retaliatory motive [*id.* at ¶ 20], and that he received two disciplinary reports for the same reason [*id.* at ¶ 17], both in violation of his First Amendment rights [*id.* at ¶ 28].[1]

The defendants in the Franklin Circuit Court filed a motion to dismiss.  [DN 23-6].  In their motion, the defendants set forth arguments as to why each of Carpenter's claims must fail. Judge Phillip Shepherd entered an order granting the defendants' motion to dismiss in March of

---

[1] Carpenter's First Amendment retaliation claim asserted a violation of federal rights under 42 U.S.C. § 1983.  The Franklin Circuit Court exercised concurrent jurisdiction over that cause of action.  *See Walters v. Moore*, 121 S.W.3d 210, 217 n.32 (Ky. Ct. App. 2003) ("The law is well-settled that § 1983 claims can be brought in state court." (citation omitted)).

2020 [DN 23-8].  Therein, Judge Shepherd addressed Carpenter's failure to state a First

Amendment retaliation claim under the standard set forth in *Thaddeus-X v. Blatter*, 175 F.3d

378, 394 (6th Cir. 1999).  [*Id.* at 3–4].  Specifically, the Court held as follows:

> As for Defendants Mitchell, Kenney, and Valentine, the Court agrees that Plaintiff
> has not pled any personal involvement by these Defendants that would allow the
> conclusion that they were acting in retaliation for Plaintiff's threatened lawsuit,
> grievance, or other action.  For Defendants Strough, Ford, Lewis, Campbell, and Long,
> the Court also agrees that they did not retaliate against Plaintiff either by administering
> write-ups or by transferring him to another facility.  Rather than issue the charges or
> transfer him under a retaliatory motive, the Court finds that Defendants' actions were
> supported by legitimate penological purposes related to promoting inmate safety.

[*Id.* at 4].  Carpenter filed a motion to reconsider the dismissal of his claims which Judge

Shepherd denied on the ground that "Plaintiff did not plead facts that would permit the Court

to find that Plaintiff was retaliated against by correctional staff even when viewing this

matter in a light most favorable to Plaintiff."  [DN 23-9].  Carpenter then appealed.  [DN 23-

10 at 1].  On September 2, 2020, Carpenter filed a motion to dismiss his own appeal.  [*Id.* at

2].[2]

### 3. Federal Court Litigation

In this federal lawsuit, Carpenter omits defendants Kenney and Valentine and adds

Lyons, Mayfield, and Thomas.  This action is premised on Carpenter's receipt of two

disciplinary reports—which he claims was done out of retaliatory motivation—and his transfer

from KSR to KSP.  Upon initial review, the Court allowed Carpenter's First Amendment

retaliation claim against the KDOC Defendants to proceed for further development.  [DN 6].

---

[2] The Franklin Circuit Court docket [DN 23-7] also indicates that Judge Wingate issued a substantially similar order [DN 23-11] months after Judge Shepherd issued his dismissal order [DN 23-8].  The orders appear to grant the same motion to dismiss, filed by the same defendants, for the same claims, in the same case.  The Wingate ordered was issued in June and docketed on July 2, 2020—after Carpenter had already appealed from the earlier Shepherd dismissal order, issued in March, but before Carpenter moved to dismiss that appeal.  [DN 23-11 at 5–7].  This oddity—unexplained by either party—does not change the Court's analysis or conclusion that Carpenter's earlier state-court litigation, no matter how resolved by the Franklin Circuit Court, precludes this federal lawsuit regarding the same claims and events.

On November 16, 2020, the KDOC Defendants filed a motion to dismiss/motion for summary judgment.  [DN 23].  In an accompanying memorandum, they argue that Carpenter failed to exhaust the administrative remedies available to him regarding his allegation that his transfer from KSR to KSP was retaliatory, as required by the Prison Litigation Reform Act ("PLRA").  [*Id.* at 5–7].  Further, the KDOC Defendants argue, Carpenter has already litigated his First Amendment allegations in his action in the Franklin Circuit Court, thus barring the further pursuit of those claims in this Court by the doctrine of *res judicata*.  [*Id.* at 8–14].  Finally, the KDOC Defendants ask the Court to assess Carpenter a "strike" pursuant to the PLRA by finding that his claims in the instant action are frivolous and malicious.  [*Id.* at 14–15].

Carpenter responded to the Defendants' motion [DN 25; DN 28] and filed a cross-motion for summary judgment [DN 27; DN 29].  Carpenter asserts that it is undisputed that he received the two disciplinary reports and was later transferred from KSR to KSP due to a retaliatory motive on behalf of the KDOC Defendants.  Accordingly, he argues he is entitled to summary judgment.  [DN 27 at 6].  As to the claim that he failed to exhaust his administrative remedies, Carpenter argues that the provisions relied upon by the KDOC Defendants do not apply to him because he was never reclassified for transfer and he did not have the ability to appeal his grievance rejection.  [DN 25 at 2; DN 28 at 1–2].  Regarding the  argument that his current action is barred by *res judicata*, Carpenter argues that he did not have a full and fair opportunity to litigate his action in Franklin Circuit Court due to a prison lockdown related to Covid-19 and riots.  [DN 28 at 3–5].  Finally, as to the Defendants' request that he be issued a strike, Carpenter asserts that he has legitimate bases for his retaliation allegation and thus a strike would be improper.  [DN 25 at 3].

## II.  STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he has the burden of proof.  *Id.*  Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof.  *Id.*  If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury.  *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990).  If the non-moving party fails to do so, the moving party is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."  *Id*. (internal quotation marks omitted).

### III. ANALYSIS

The KDOC's motion is premised on theories of failure to exhaust and *res judicata*.

### 1. Failure to Exhaust

The KDOC Defendants argue that Carpenter failed to fully exhaust the grievance procedure for his allegation that the Defendants ordered his transfer from KSR to KSP in retaliation for his exercise of First Amendment rights.  Carpenter responds that his grievance was rejected as non-grievable and that he was informed that he did not have the ability to appeal his grievance.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.] § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement "give[s] prison officials a fair opportunity to address a prisoner's claims on the merits before federal litigation is commenced."  *Mattox v. Edelman*, 851 F.3d 583, 592 (6th Cir. 2017).  To exhaust a claim, a prisoner must proceed through all steps of a prison's or jail's grievance process because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies."  *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999).  The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), that failure to "properly" exhaust is an affirmative defense that can bar suit in federal court.  "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules," given that "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90–91.  A prisoner is required "to make affirmative efforts to comply with the administrative procedures,"

and the Court will analyze "whether those efforts to exhaust were sufficient under the circumstances." *Mattox*, 851 F.3d at 590 (internal quotation marks and citations omitted).

Defendants argue that under Kentucky Corrections Policy and Procedure ("CPP") 14.6(II)(C)(5), a "[c]lassification decision or appeal of a classification decision including transfer denial, recommendation, or approval" is non-grievable under the standard grievance procedure of CPP 14.6. They assert, however, that transfers are classification decisions and are appealable under CPP 18.1(II)(M), which provides an administrative appeal process for classification disputes. That provision provides, in relevant part:

> M. Appeals
> 1. An inmate may appeal any classification action to the Warden or his designee within five (5) working days of the action. The Warden or his designee shall respond in writing to an appeal of a classification action within fifteen (15) working days of receipt of the appeal. . . .
> 2. If the inmate is not satisfied with the response received from the Warden or his designee, the inmate may request in writing to the Director of Population Management or designee that his case be reviewed. This request shall be submitted within five (5) working days of receipt of the Warden's response. The Director of Population Management shall respond in writing within fifteen (15) working days of receipt of the request for review.

[DN 23-3 at 9].

The KDOC Defendants argue that Carpenter failed to exhaust this administrative remedy with respect to his transfer. They attach the affidavit of Amanda Scott, the KDOC Corrections Program Administrator, who states that the office of the Adult Classifications Branch, which is where the second level of review of any appeal filed by Carpenter would have been conducted, has no record of Carpenter appealing his transfer from KSR to KSP. [DN 23-4 at 2]. In response, Plaintiff maintains that he did properly exhaust his claims. He states that he filed a grievance on September 16, 2019, which he attached to his complaint [DN 1-13 at 1–3], and it

was deemed "non-grievable" under CPP 14.6 [DN 1-13 at 4].  In other words, if Carpenter was

to complain about his classification, he had to challenge it under a different procedure.

In a similar case in this district, an inmate plaintiff alleged that KDOC officials twice

transferred him based on a retaliatory motive.  *Haun v. Erwin*, No. 4:16-CV-P43-JHM, 2018 WL

1324160, at *2 (W.D. Ky. March 14, 2018).  The defendants argued that the plaintiff had failed

to exhaust his administrative remedies under CPP 18.1(II)(M), the same provision on which the

KDOC Defendants rely in this motion.  *Id.* at *3.  In that case, the court relied on an analogous

case from the Eastern District of Kentucky that "found that '[w]hile acknowledging that CPP

14.6(II)(C)(5) states that classification decisions are not grievable under CPP 14.6's general

grievance procedure applicable to most inmate complaints, the defendants explain that CPP

18.1(II)(M) provides a separate appeal procedure for classification decisions, one Hightower

admits that he did not pursue.'"  *Id.* (quoting *Hightower v. Thompson*, No. 0:15-93-HRW, 2016

WL 5422061, at *3 (E.D. Ky. Sept. 27, 2016)).  Indeed, most inmate grievances regarding prison

life must be pursued in accordance with the procedure set forth in CPP 14.6, unless they are

either specifically identified as "non-grievable" matters or a provision like CPP 18.1 provides an

independent appeal and review mechanism.  The *Haun* Court, ruling that the plaintiff had failed

to exhaust his retaliatory transfer claim under CPP 18.1(II)(M), granted summary judgment in

the defendants' favor.

On a motion for summary judgment on failure-to-exhaust grounds, a defendant bears the

initial burden of establishing that a prisoner failed to exhaust administrative remedies.  *Hill v.*

*Rubowsky*, No. 4:12CV00229, 2014 WL 797589, at *4 (N.D. Ohio Feb. 27, 2014) (citing *Jones*,

549 U.S. at 216).  "'Once the defense meets its burden, the burden shifts to the plaintiff to show

that the administrative remedies were unavailable.'"  *Id.* (quoting *Jones*, 549 U.S. at 216); *see*

*also Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials.").

Defendants have presented the KDOC policy, CPP 18.1(II)(M), as evidence of an administrative remedy available to Carpenter which required him to appeal his KSR to KSP transfer decision to the Warden within five days and, if unsatisfied with the Warden's decision, to request in writing to the Director of Population Management that his case be reviewed.  In response, Carpenter never says that he availed himself of this procedure.  He maintains only that he filed a grievance under CPP 14.6, which was rejected as a "non-grievable" issue. Importantly, Carpenter does not maintain that the procedure under CPP 18.1(II)(M) was unavailable to him or that Defendants engaged in any conduct to impede his access to this procedure.  The Defendants have met their burden of establishing that Carpenter failed to exhaust his available administrative remedies on his transfer claims.

Following the direction of the *Haun* and *Hightower* courts, the Court holds that Carpenter has failed to establish a genuine issue of material fact regarding exhaustion and grants the motion for summary judgment on the retaliatory-transfer claims on that basis.  The Court therefore need not address Defendants' other arguments concerning Carpenter's retaliatory-transfer claims.

### 2. *Res Judicata*

The KDOC Defendants maintain that Carpenter's First Amendment retaliation claim in his state-court complaint relied on the same factual narrative he offers here regarding his property being packed up and two disciplinary reports being issued.  Because the Franklin Circuit Court dismissed Carpenter's claim that those two disciplinary reports were issued out of retaliatory motive in violation of Carpenter's First Amendment rights, Defendants assert that the

doctrine of *res judicata* bars Carpenter from reasserting those claims in federal court.  In response, Carpenter claims that he was not able to actually litigate these claims in state court due to the circumstances of his incarceration: he contends that he was not afforded access to "his case files, legal material, case law, law library access, legal supplies or legal aids."  [DN 29 at 3].

The KDOC Defendants' motion relies on issue preclusion: "the foreclosure of an issue previously litigated."  *Mitchell v. Chapman*, 343 F.3d 811, 818 n.5.   They assert that Carpenter already raised this same issue and received a final judgment on it in Franklin Circuit Court.

The KDOC Defendants contend that federal law applies because jurisdiction in the prior litigation was based on a federal question.  "Under well-settled federal law," however, "when state-federal jurisdiction is concurrent on the federal claim, the law of the state in which an earlier judgment is rendered governs its preclusive effect on factual issues raised in a subsequent federal action."  *See Kaufman v. Seidman*, 984 F.2d 182, 183 (6th Cir. 1993).  Therefore, Kentucky preclusion law applies here.

And according to Kentucky law, issue preclusion requires four elements: (1) identity of issues, (2) a final decision or judgment on the merits, (3) an issue necessary to the decision that the estopped party had a full and fair opportunity to litigate, and (4) a prior losing litigant. *Moore v. Commonwealth*, 954 S.W.2d 317, 319 (Ky. 1977) (citing *Sedley v. City of West Buechel*, 461 S.W.2d 556, 559 (Ky. 1970)).

Carpenter does not dispute three of the four elements: identical issues, a final decision on the merits, and a losing litigant.  In his state-court action, Carpenter alleged that he was issued two disciplinary reports—KRS-2019-01859 and KRS-2019-01863—because of the Defendants' retaliatory motive.  [DN 23-5 at ¶¶ 17, 28].  The Franklin Circuit Court's contrary determination

was necessary to the court's dismissal.  And the Franklin Circuit Court entered a final judgment dismissing his complaint with prejudice.  [DN 23-8; DN 23-9; DN 23-11].

The only issue that remains—and the only element that Carpenter addresses—is whether he had a full and fair opportunity to litigate.  Carpenter must have had a realistically full and fair opportunity to litigate the issue, *Sedley*, 461 S.W.2d at 559, and principles of justice and fairness must be served by application of issue preclusion, *City of Covington v. Bd. of Trs. of the Policemen's & Firefighters' Ret. Fund*, 903 S.W.2d 517, 522 (Ky. 1955).  Carpenter cannot successfully argue that his First Amendment retaliation claim was not fully litigated in the Franklin Circuit Court.  Carpenter's allegation that Covid restrictions and riot safety measures left him without adequate access to the legal resources, including his case files, case law, or legal supplies, is essentially a claim that he was not provided access to the courts.  *See Bounds v. Smith*, 430 U.S. 817, 828 (1977) ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.").

When a prison regulation impinges on an inmate's constitutional rights, such as the right to access the courts, the regulation is valid if it is reasonably related to legitimate penological interests.  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  In making this assessment, the Court is mindful that jail and prison administrators have broad discretion to manage their facilities, especially to maintain safety.  *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel. . . .  Accordingly, . . . even when an institutional restriction infringes a specific constitutional guarantee, . . . the price must be evaluated in the light of the central objective of

prison administration, safeguarding institutional security."). If the Court accepts Carpenter's allegations as true—despite unrebutted contrary evidence submitted by the KDOC Defendants— he has still failed to allege a successful claim regarding his access to the courts because of the countervailing state interest in preventing violence and the spread of Covid in prisons. Administrators have both the authority and responsibility to place some restrictions on access to the law library and affiliated legal materials to implement COVID-19 safety precautions, as well as precautions related to prison riots, even if it somewhat hampers prisoners' ability to pursue their legal claims. *Turner*, 482 U.S. at 89; *see also Taylor v. New York City*, 517 F. Supp. 3d 191, 196 (S.D.N.Y. 2021). In other words, the restriction on access to legal materials is reasonably related to a legitimate penological interest.

Carpenter admits that he did not have access to legal resources because of ongoing riots, threats made against him, and Covid-19 policies. [DN 28 at 2–5.] He does not indicate how officials should have allowed him greater access to legal materials while keeping these restrictions in place. Even so, during this period he still managed to file a motion for reconsideration of the state-court dismissal, an appeal to the Kentucky Court of Appeals, this federal lawsuit, and several other cases—including a federal habeas petition. [DN 48-7–9]. Many of these filings included case law and legal analysis. *Id*. So he was able to litigate to at least some extent during the pandemic and riot lockdowns. In light of the need to respect the discretion of prison administrators to protect the safety of inmates and corrections personnel, as well as evidence that Carpenter did not raise an issue regarding his access to legal resources in his state court litigation until he filed his motion to dismiss the appeal of his complaint's dismissal [DN 48-2 at 2–3], Carpenter received a full and fair opportunity to litigate his claims in the Franklin Circuit Court litigation.

The factual scenario underlying both the state and federal actions is identical. *Yeoman v. Commonwealth Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998) (same transactional nucleus of facts). Clearly, the current action is based on the same facts and controversies that he previously litigated until the state court granted a motion to dismiss, denied his motion to reconsider, and entered final judgment. That being the case, he cannot now seek an alternative ruling in a new forum. Accordingly, the Franklin Circuit Court's judgment is entitled to preclusive effect and Carpenter's claim is barred by the doctrine of *res judicata*.

Although Carpenter did not name Lyons and Mayfield in his action before the Franklin Circuit Court, they are nonetheless entitled to summary judgment based on defensive collateral estoppel. This refers to "a defendant [who] seeks to prevent a plaintiff from asserting a claim [the] plaintiff had previously litigated and lost against another defendant." *City of Covington*, 903 S.W.2d at 521.

Defensive collateral estoppel requires the same elements set forth regarding issue preclusion: "(1) identity of issues; (2) a final decision or judgment on the merits; (3) a necessary issue with the estopped party given a full and fair opportunity to litigate; [and] (4) a prior losing litigant." *Moore*, 954 S.W.2d at 319. As explained above, Carpenter raised and litigated these identical issues in state court, before the state court dismissed the claim on the merits in a manner necessary to the court's judgment. Thus, even though Lyons and Mayfield are newly named Defendants in this action, they too are entitled to judgment in their favor on Carpenter's retaliation claim based on his disciplinary reports.

### 3. PLRA Strike

The KDOC Defendants ask the Court to dismiss this action on the ground that Carpenter maliciously filed a frivolous lawsuit for the sole purpose of vexing Defendants. *See* 28 U.S.C.

§ 1915(g).  "A case is frivolous if it lacks an arguable basis either in law or fact."  *Gilmore v.*
*Corr. Corp. of Am.*, 92 F. App'x 188, 189 (6th Cir. 2004) (citation omitted).  In light of the
pandemic, the unusual nature of the state-court rulings, and the fact-specific nature of state
preclusion law, however, Carpenter's previous ability to fully and fairly litigate his state case
was not so obvious as to render this subsequent suit clearly frivolous.  Nor does defense counsel
point to any reason, other than ipse dixit, that would allow the Court to conclude Carpenter filed
this suit with a malicious intent.

### 4. Remaining Motions for Default and Appointment of Counsel

As to Carpenter's motion for default, the KDOC Defendants responded that the Court
should deny that motion because they filed their motion to dismiss/motion for summary
judgment within the timeframe permitted.  [DN 24 at 1].  They are correct.  Because the
Defendants filed a timely responsive pleading, the Court denies Carpenter's motion for default
judgment [DN 22].

And as to Carpenter's motion for appointment of counsel [DN 34], the Court denies this
subsequent motion for the reasons set forth in the Court's December 22, 2020 Order [DN 33]
denying his first motion for appointment of counsel.

### IV.  CONCLUSION

Carpenter's failure to exhaust the administrative remedies available to him is fatal to his
retaliation claim based on his transfer from KSR to KSP.  Moreover, because the requirements of
issue preclusion are satisfied regarding Carpenter's retaliation claim based on his disciplinary
reports, the Franklin Circuit Court's decision is entitled to preclusive effect.  For the foregoing
reasons, the Court **GRANTS** Defendants' motion for summary judgment [DN 23], **DENIES**

Carpenter's motion for default [DN 22], and **DENIES** Carpenter's motion for appointment of

counsel [DN 34].  The Court will enter a separate Judgment dismissing this case.

Date:

Benjamin Beaton, District Judge

United States District Court

cc:     Plaintiff, *pro se*                                    November 30, 2021
        Counsel of record
B213.013